# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **SOUTHERN RESEARCH INSTITUTE,** | ) <br> ) <br> ) |
| **Plaintiff,** | ) <br> ) | Civil Action Number <br> **2:19-cv-00932-AKK** |
| v. | ) <br> ) |
| **PAM INNOVATION CORP. AND DR. PARSHU RAM NARIJAN SHASTRI A/K/A DR. PETER N. SHASTRI,** | ) <br> ) <br> ) <br> ) <br> ) |
| **Defendants.** | ) |

## **MEMORANDUM OPINION AND ORDER**

This action arises from a contract dispute between the Southern Research Institute and PAM Innovation Corporation and Dr. Parshu Ram Nirangan Shastri a/k/a Dr. Peter N. Shastri, PAM's CEO, CFO, and director (collectively "the Defendants"). Doc. 1. The Defendants have moved to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue, doc. 6. And, Southern Research has moved for judgment under Rule 4(d)(2) to recover the costs it incurred to serve the Defendants in light of their failure to waive service, doc. 14, and, alternatively, for leave to obtain jurisdictional discovery, doc. 19. For the reasons explained below, the Defendants' motion to dismiss, doc. 6, is due to be denied, rendering Southern Research's motion for alternative relief,

doc. 19, moot. Southern Research's motion for judgment, doc. 14, is due to be granted.

I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) authorizes a motion to dismiss for lack of personal jurisdiction. "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The court must accept the plaintiff's allegations as true unless a defendant challenges jurisdiction and offers evidence to contradict the plaintiff's allegations. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). If the defendant challenges personal jurisdiction with evidence supporting its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless [the defendant's] affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). To meet that burden, the plaintiff must provide sufficient evidence concerning the nonresident defendant's contacts with the forum to withstand a motion for a directed verdict. *Id.* at 1268-69. The court must view all of the jurisdictional evidence in the light most favorable to the plaintiff. *Id.* at 1269.

Moreover, Federal Rule of Civil Procedure 4 creates "a duty to avoid unnecessary expenses of serving the summons" on parties subject to service. Fed. R. Civ. P. 4(d)(1). To reduce the expense associated with perfecting service, "[t]he plaintiff may notify . . . a defendant that an action has been commenced and request that the defendant waive service of a summons." *Id.* A defendant located within the United States who fails to sign and return a waiver without good cause incurs:

(A) the expenses later incurred in making service; and

(B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

*Id.* 4(d)(2). "It is not a good cause for failure to waive service that the claim is unjust or that the court lacks jurisdiction . . . " Notes of Advisory Committee on 1993 Amendments to Federal Rules of Civil Procedure, Fed. R. Civ. P. 4.

## II. BRIEF FACTUAL AND PROCEDURAL BACKGROUND

In 2018, PAM engaged Southern Research to "operate a pilot-scale combustion test for evaluation of [a] combustion catalyst" for an estimated cost of $447,950.00. Doc. 1 at 3 (alteration in original). The contract provided that Alabama law would apply and that the parties would litigate their disputes in "a court of competent jurisdiction located in Birmingham, Alabama." Doc. 1-2 at 9-10. After partially performing on the contract, Southern Research delivered an invoice to the Defendants requesting the agreed upon sum. Doc. 1 at 3. Despite the Defendants'

failure to pay this invoice, Southern Research fully performed on the contract by delivering their evaluation report. *Id.* at 3-4. Thereafter, Southern Research made numerous and unsuccessful attempts to obtain payment. *Id.* at 4.

Consistent with the contract's dispute resolution, Southern Research attempted to resolve the debt cooperatively, including by requesting that the Defendants participate in selecting a mediator. *Id.* (citing doc. 1-2 at 9-10). After initially ceasing to communicate with Southern Research, the Defendants eventually agreed to mediate the dispute. *Id.* at 5. However, the Defendants requested multiple delays, and ultimately failed to appear for the mediation without notice on the agreed upon date. *Id.*

After filing this lawsuit, Southern Research requested the Defendants waive service by delivering the appropriate two Waiver Request Packets to PAM's registered agent, Margaret Heine, to the Defendants' former counsel, Michael Martin, to Shastri at the home address he had previously provided Southern Research and where he had received the contract, and to the email address Shastri had used to communicate with Southern Research. Doc. 14 at 2-3; *see* doc. 14-1. The waiver packets were clearly addressed to indicate their contents[1] and included "1) a

---

[1] Each notice letter was addressed as follows:
    Waiver of the Service of Summons (the "Waiver")
    Case No.: 2:19-CV-00932-JHE Southern Research Institute (Plaintiff) v. PAM Innovation
    Corp. and Dr. Parshu Ram Nirangan Shastri a/k/a Dr. Peter N. Shastri (Defendant(s))
Doc. 14-1.

4

transmittal letter advising of the contents of the Waiver Request Packet ("Notice Letter"); 2) a copy of the Complaint and Exhibits thereto; 3) two (2) copies of form AO 399; and 4) a self-addressed stamped envelop[]." Doc. 22. at 2; *see* doc. 14-1. Southern Research alleges that it delivered all physical packets by certified mail and requested return receipts. Doc. 14 at 3. Shastri never claimed his package. *Id*. For their part, after receiving the packets, *see* doc. 14-2, PAM's former counsel and registered agent advised Southern Research that they were not authorized to waive process for PAM or Shastri, *see* docs. 14-3; 14-4, though PAM's registered agent did forward the waiver packet to Shastri and confirmed for Southern Research Shastri's home address, doc. 14-4. Shastri does not deny that he received the waiver packets. *See generally* doc. 21. Neither defendant waived service, and, as a result, Southern Research personally served Shastri. Doc. 14 at 4; *see also* docs. 4-5.

## III. ANALYSIS

The court begins its analysis with the Defendants' motion to dismiss based on lack of personal jurisdiction and improper venue, before turning to Southern Research's motion for a judgment on the costs it incurred for service of process.

### A.

The Defendants contend that this court lacks personal jurisdiction over them. "A federal court sitting in diversity may exercise personal jurisdiction [over a nonresident defendant] to the extent authorized by the law of the state in which it

5

sits and to the extent allowed under the Constitution." *Meier*, 288 F.3d at 1269. Under its long-arm statute, "Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000) (citing *Martin v. Robbins*, 628 So. 2d 614, 617 (Ala. 1993)); *see also* Ala. R. Civ. P. 4.2(b). The Due Process Clause allows for two types of personal jurisdiction—"general" and "specific" personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011). For either general or specific jurisdiction to comport with due process, the defendant must have certain minimum contacts with the state, and the "minimum contacts inquiry focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). "This inquiry ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the random, fortuitous, or attenuated contacts it makes by interacting with other persons affiliated with the state." *Id.* (citations and quotation marks omitted).

At issue here is whether the court may exercise specific jurisdiction over

Shastri.[2] *See* doc. 6 at 1-2. Specific jurisdiction is present only if an action "aris[es] out of or relat[es] to the defendant's contact with the forum." *Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). Generally this entails, in part, assessing whether (1) "the plaintiff[] ha[s] established that [her] claims 'arise out of or relate to' at least one of the defendant's contacts with the forum," and (2) "that the defendant 'purposefully availed' itself of the privilege of conducting activities within the forum state." *Waite*, 901 F.3d at 1313 (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)) (alteration in original omitted). Here, however, there is no dispute that Shastri has not had any contacts with Alabama. More specifically, Shastri states, and Southern Research does not dispute, that he "has never been to the State of Alabama[,] resides in the State of California[, and] did not personally enter into an

---

[2] The Defendants also contest this court's personal jurisdiction over PAM and whether venue is proper in this District under 28 U.S.C § 1391. Doc. 6 at 2. The Defendants concede that the contract set this District as the proper venue for any dispute. *Id*. at 9. However, they contend that venue is improper for Shastri because this court lacks personal jurisdiction over him for the reasons discussed more fully in this opinion. Because Defendants' venue claim as to Shastri is wholly dependent on the resolution of the personal jurisdiction claim, this claim fails for the reasons discussed *infra*.

      Defendants further argue that this court lacks personal jurisdiction over PAM and venue is improper for PAM because "SRI drafted the contract requiring PAM to submit to the jurisdiction of an Alabama court . . . [a]nd such a provision is unconscionable and unreasonable given the circumstances of this dispute." Doc. 6 at 2. Defendants provide no case law or analysis to support their conclusory statements, *see generally id.*, and "perfunctory and underdeveloped argument[s]" are deemed waived. *U.S. Steel v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007). Moreover, venue selection clauses "should be en[]forced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972).

7

agreement with Southern Research [but rather] did so as the director of Research and Development of PAM Innovation Corp." Doc. 6 at 1-2. *See also* doc. 6-1 at 1. Southern Research rests its jurisdictional claims instead on PAM's contractually assenting to personal jurisdiction in this court, doc. 1 at 2 (citing doc. 1-2 at 9-10), and its contention that Shastri "has operated PAM purely as his alter ego since PAM's formation," doc. 1 at 3, 7-8. Southern Research argues this court should pierce the corporate veil to find that any contact Shastri made or action he took as an agent of PAM was in fact his own. In other words, personal jurisdiction over Shastri hinges on whether Southern Research can show that Shastri uses PAM as his alter ego.

Personal jurisdiction may be based on an alter-ego theory when "separate corporate status is formal only" and has no "semblance of individual identity." *Meier*, 288 F.3d at 1272; *see also Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293-94 (11th Cir. 2000). However, courts do not exercise the power to pierce the corporate veil lightly. *Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296, 1304 (S.D. Ala. 2012) (citing *Gilbert v. James Russell Motors, Inc.*, 812 So. 2d 1269, 1273 (Ala. Civ. App. 2001)). In deciding whether to pierce the corporate veil in the jurisdictional context, courts in Alabama use a three-part test that entails ascertaining whether the dominant party has complete control and

dominion, has misused that control, and that misuse has caused the injury at issue.[3]

Assuming this showing is made, the movant must then show: 1) that the corporation is inadequately capitalized; 2) that the corporation is conceived or operated for a fraudulent purpose; or 3) that the corporation is operated as an instrumentality or alter ego of an individual or entity with corporate control. *First Health, Inc. v. Blanton*, 585 So. 2d at 1334 (citing *Messick v. Moring*, 514 So. 2d 892, 894 (Ala.1987)). *See also M & M Wholesale Florist, Inc. v. Emmons*, 600 So. 2d 998 (Ala.1992). "In the absence of undisputed evidence that some or all of these factors existed," it is error for a court to conclude "that piercing the corporate veil was required as a matter of law." *Simmons v. Clark Equipment Credit Corp.*, 554 So. 2d 398, 401 (Ala.1989).

Southern Research argues that this court should disregard PAM's corporate existence because "PAM is the alter ego of Shastri," that "Shastri has had, at all

---

[3] The complete elements to justify piercing the corporate veil under the alter ego theory are
1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will or existence of its own;
2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of the control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;
3) The misuse of this control proximately cause[d] the harm or unjust loss complained of.

*First Health, Inc. v. Blanton*, 585 So. 2d 1331, 1334-35 (Ala. 1991).

9

times, complete control and domination of PAM's finances, policy, and business practices[, and has] misused his control of PAM and entered into the Contract knowing that PAM was not adequately capitalized and had insufficient capital to perform its obligations under the Contract." Doc. 1 at 7-8. Citing PAM's Articles of Incorporation and Statement of Information and the contract it attached to its complaint, *see* doc. 1-1; 1-2, Southern Research states that Shastri formed PAM and is listed as its "incorporator . . . CEO, Secretary, CFO, and sole director," doc. 1 at 2, and that he engaged Southern Research's services and executed the attendant contract, *id*. at 3. Southern Research further contends that "Shastri never adequately capitalized PAM," but nevertheless "caused PAM to [enter the contract] notwithstanding his knowledge that he had never sufficiently capitalized PAM to make repayment possible." Doc. 1 at 3.

The Defendants do not challenge these contentions, and instead rely only on Shastri's affidavit stating that he had not traveled to Alabama, was a resident of California, and signed the contract with Southern Research as a representative of PAM. *See* docs. 6 and 6-1. Under Alabama law, in the absence of any evidence to the contrary or even a general statement disputing Southern Research's contentions, this court must construe the factual allegations related to the purported alter ego as

true.[4] Based on *Puccio* and *J.C. Duke*, Southern Research's uncontroverted allegations that PAM was merely Shastri's alter ego establish this court's personal jurisdiction over Shastri. In addition, there is also a disputed issue regarding PAM's capitalization and whether Shastri conceived or operated it for a fraudulent purpose, *see First Health*, 585 So. 2d at 1334, which means that the extraordinary circumstances necessary to assert personal jurisdiction over Shastri may exist. Therefore, the Defendants' motion to dismiss is due to be denied.

## B.

Southern Research moved pursuant to Fed.R.Civ.P. 4(d)(2) for a judgment for the (1) expenses it incurred to serve the Defendants after they failed to respond to a waiver of service and (2) reasonable expenses, including attorneys' fees, in connection with the motion. Rule 4(d)(2) mandates that when a defendant fails to waive formal service without good cause, "the court must impose on the defendant:

---

[4] For example, in *Ex Parte Puccio*, where, as here, the defendant did not "specifically address the factual allegations" raised by the plaintiff regarding the corporation's status as an alter ego, the Alabama Supreme Court found that Puccio's arguments that he was not an Alabama resident and had insufficient contacts with Alabama to subject him to the court's personal jurisdiction were insufficient to challenge the plaintiff's factual allegations regarding an alter ego relationship. *Ex parte Puccio*, 923 So. 2d 1069, 1072, 1076 (Ala. 2005); *See also id.* at 1072 ("In construing the allegations in the [plaintiffs'] complaint not controverted by [the defendant] as true, as we are required to do for the purposes of Puccio's motion to dismiss, . . . we cannot say that the trial court erred in denying the motion."); *J.C. Duke & Associates General Contractors, Inc. v. West*, 991 So. 2d 194, 199 (Ala. 2008) (denying a motion to dismiss for lack of personal jurisdiction where defendant "offered no evidence to counter the allegations" that her corporation was her alter ego); *Farmlinks, LLC v. E K Holding, Inc.*, 2009 WL 10703244, at *3-4 (N.D. Ala. Sept. 8, 2009) (recognizing the *J.C. Duke* exception to the corporate shield doctrine).

(A) the expenses later incurred in making service; and the (B) reasonable expenses, including attorney's fees, of any motion required to collect those service expenses."

The Defendants do not dispute that Shastri and PAM failed to sign and return the waivers. *See* doc. 21. Therefore, the only issue is whether the Defendants have shown good cause for those failures. The 1993 Advisory Committee on the Federal Rules of Civil Procedure provides that good cause is established when "a defendant did not receive the request or was insufficiently literate in English to understand it," and that a finding of "sufficient cause should be rare." Fed. R. Civ. P. 4(d) 1993 amend note. Good cause "does not carry a fixed definition; instead it takes on different meaning in different contexts." *Butler v. Crosby*, 2005 WL 3970740, at *2 (M.D. Fla. June 24, 2005). Accordingly, good cause is a matter of judicial discretion and differs depending on the circumstances. *See generally Southern Ry. Co. v. Landham*, 403 F.2d 119, 126 (5th Cir. 1968); *U.S. v. Wright Motor Co., Inc.*, 536 F.2d 1090, 1093 (5th Cir. 1976).

In response to the motion, the Defendants contend first that Southern Research "has not provided evidence that [Shastri] was actually notified that an action had been commenced against him personally, or PAM Innovation Company." Doc. 21 at 1. And, instead of denying that they received the waiver packet or providing any evidence of mail service disruption, the Defendants implore the court to infer Shastri's lack of receipt from what they perceive as Southern Research's failure to

12

present evidence to the contrary.[5] But, the burden is on the Defendants to show good cause either (1) through a statement by Shastri that he never received a request for waiver of service, in conjunction with an explicit denial of receipt in an affidavit or declaration,[6] or (2) through evidence suggesting that Southern Research sent the waiver requests to an incorrect address.[7] The Defendants' contention that Southern Research failed to provide proof that the Defendants received notice falls short of establishing good cause.

The Defendants contend next that Southern Research "did not comply with the notice requirements under Rule 4(d)," doc. 21 at 4. To benefit from Rule 4(d)(2),

---

[5] *See* doc. 21 at 2-4 ("Plaintiff's motion appears to presume Dr. Shastri received notice of the pending action without actually showing the same occurred . . . The correspondence with PAM's registered agent . . . does not give any indication that [the waiver packet] was actually received by Dr. Shastri . . . The correspondence [with Shastri's former counsel] also does not indicate that [former counsel] ever sent the Waiver Request Packet to Dr. Shastri or spoke to Dr. Shastri about these documents . . . By Plaintiff's own admission the Waiver Request Packet . . . was returned as "unclaimed" [which] would indicate that the postal service attempted delivery but was not successful . . . Plaintiff has not provided any evidence that Dr. Shastri ever actually received a copy of the waiver packet . . . Unclaimed does not mean that it was rejected. There can be no inference drawn from the fact that the certified mail was unclaimed that it was known by Dr. Shastri that it existed and he chose not to waive service . . . Based on the fact that the Certified Mail was "unclaimed", not rejected, and that Dr. Shastri is often away from his home, it is much more likely that he simply was not at his home when the postal service attempted delivery")
[6] *See, e.g. Harris v. Pierce County Jail Classification*, 2016 WL 6272348, at *2 (W.D. Wash. Oct. 3, 2016) (finding a prisoner "did not receive the service packet" based on his declaration); *Patel v. Santana*, 2010 WL 11629114, at *2 (N.D. Tex. Sept. 14, 2010) (finding the defendants did not receive notice of plaintiff's request for waiver of service based on their declarations).
[7] *See, e.g. Becker v. Carney*, 2017 WL 237559, at *1 (W.D. Wash. Jan. 19, 2017) (finding good cause to deny at 4(d)(2) motion where mail was returned marked "no mail receptacle/unable to forward"); *Koellen v. Pollard*, 2010 WL 2330270, at *1 (E.D. Wis. June 7, 2010) (finding no receipt when mail had been sent to a prison's physical address rather than its post office box and was returned marked "no mail receptacle").

the plaintiff's notice and request must comply with the Rule.[8] When defendants do not receive proper notice of an action because of a plaintiff's failure to comply with Rule 4(d), the majority approach is to find good cause for the failure to return the waiver.[9] However, a plaintiff's technical failure to comply is not, by itself, good cause for a defendant's failure to waive service under Rule 4(d)(2).[10]

---

[8] Rule 4(d)(1) states the notice and request must:

    (A) be in writing and be addressed:
      (i) to the individual defendant; or
      (ii) for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;
    (B) name the court where the complaint was filed;
    (C) be accompanied by a copy of the complaint, 2 copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form;
    (D) inform the defendant, using the form appended to this Rule 4, of the consequences of waiving and not waiving service;
    (E) state the date when the request is sent;
    (F) give the defendant a reasonable time of at least 30 days after the request was sent—or at least 60 days if sent to the defendant outside any judicial district of the United States—to return the waiver; and
    (G) be sent by first-class mail or other reliable means.

[9] *See Spivey v. Bd. of Church Extension and Home Mission of Church of God*, 160 F.R.D. 660, 663 (M.D. Fla. 1995) (finding good cause for defendant's failure to return waiver when plaintiff did not address notice to defendant directly, despite defendant's awareness that it was likely meant for him); *Farrell v. Woodham*, 2002 WL 32107644, at *5 (M.D. Fla. May 29, 2002) (no award because plaintiff did not comply with the technical requirements of Rule 4(d)(2)); *Steinberg v. Quintet Publ'g. Ltd. et al.*, 1999 WL 459809, at *2 (S.D.N.Y. June 29, 1999) (good cause shown where plaintiffs did not contest that they failed to meet the requirements).

[10] *See Stapo Indus., Inc.v. M/V Henry Hudson Bridge*, 190 F.R.D. 124, 124 (S.D.N.Y. 1999) (awarding costs where plaintiff's technical error "neither undermined the purposes of Rule 4(d) nor prejudiced [the defendant] in the slightest"); *Dymits v. American Brands, Inc.*, 1996 WL 751111, at *15-16 (N.D. Cal. Dec. 31, 1996) (finding that a plaintiff's omission of one sentence of the Rule 4(d)(1)(D) Notice form did not prejudice the defendant); *Trevino v. D.H. Kim Enters., Inc.*, 168 F.R.D. 181, 182-3 (D. Md. 1996) ("although Plaintiffs did not use the official form" described in Rule 4(d)(2)(D), "they did inform Defendant of the consequences of compliance . . . and of non-compliance").

A review of Southern Research's waiver packets shows that the Defendants are correct that Southern Research failed to include the Rule 4 Notice of a Lawsuit and Request to Waive Service of Summons contemplated in Rule 4(d)(1)(D).[11] *See* doc. 14-1. However, Southern Research did include a Waiver of Service Summons, which explains the consequences of refusing to waive service. *See* doc. 14-1 at 5. Moreover, contrary to the Defendants' contention that Southern Research did not provide adequate notice about the lawsuit,[12] although not technically perfect, the waiver packets provided the Defendants with proper notice regarding Southern

---

[11] The Notice provides in pertinent part:

> WHY ARE YOU GETTING THIS?
> A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached. This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within (give at least 30 days or at least 60 days if the defendant is outside any judicial district of the United States) from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.
>
> WHAT HAPPENS NEXT?
> If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States). If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

[12] The Defendants claim the packet failed to provide "notice that there [wa]s a case against Dr. Shastri or PAM because it never says anything about there [being] a case . . . commenced[, . . . ] does not name the Court where the action was filed, explains nothing about the consequences of waiving or not waiving service, nor does it name a reasonable time, or any time at all, to return the waiver." Doc. 21 at 4.

Research's lawsuit against them, as well as the consequences of failing to waive service. *See* doc. 14-1 at 5.

It is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of . . . mere technicalities." *Symonette v. V.A. Leasing Corp.*, 648 Fed. Appx. 787, 788 (11th Cir. 2016) (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962)). Instead, the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Relevant here, Rule 4 is designed to ensure that "[d]efendants that magnify costs of service by requiring expensive service not necessary to achieve full notice of an action brought against them are required to bear the wasteful costs." *Stapo Indus., Inc.*, 190 F.R.D. at 126 (citing Fed. R. Civ. P. 4 Advisory Committee Note. reprinted in 1 Moore's Federal Practice 3d § 4App.09[02], at 58). Consistent with the spirit of Rule 4, because Southern Research substantially complied with Rule 4(d)(1), Southern Research is entitled to reasonable attorneys' fees and costs, and may file a notice by March 30, 2020 of the amount it seeks and the breakdown to facilitate scrutiny by the Defendants. Defendants' response, if any, challenging the time, billing rates, costs, or anything else related to the amount sought is due by April 7, 2020.

## IV. CONCLUSION AND ORDER

Based on the foregoing reasons, the Defendants' Motion to Dismiss, doc. 6, is **DENIED**. Southern Research's motion for alternative relief in the form of leave to obtain jurisdictional discovery, doc. 19, is **MOOT**. Southern Research's motion for judgment under Rule 4(d)(2), doc. 14, is **GRANTED**.

**DONE** the 24th day of March, 2020.

                                                **ABDUL K. KALLON**
                                      UNITED STATES DISTRICT JUDGE